| |
|---|
| **Matter of Clancy v Kavanagh** |
| 2024 NY Slip Op 30026(U) |
| January 3, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 158921/2022 |
| Judge: Nancy M. Bannon |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. NANCY M. BANNON**

*Justice*

-------------------------------------------------------------------------------X

In the Matter of the Application of

MICHAEL C CLANCY,

Petitioner,

For Judgment pursuant to Article 78

- v -

LAURA KAVANAGH, THE BOARD OF TRUSTEES, LOUIS
LOMBARDI, DAMIAN MARTINO, and PETER NEUMANN,

Respondents.

-------------------------------------------------------------------------------X

| | |
|---|---|
| PART | 42 |
| INDEX NO. | 158921/2022 |
| MOTION DATE | 04/14/2023 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28

were read on this motion to/for                    ARTICLE 78 (BODY OR OFFICER)                    .

## I.      INTRODUCTION

In this proceeding pursuant to CPLR Article 78, petitioner Michael Clancy, a retired firefighter with the New York City Fire Department ("FDNY"), seeks judicial review of a determination by respondent the Board of Trustees of the FDNY, Article I-B Pension Fund ("Board of Trustees"), to deny his application for Accident Disability Retirement ("ADR") and instead grant him Ordinary Disability Retirement ("ODR").  Respondents Laura Kavanagh, former Acting Fire Commissioner of the FDNY, and Louis Lombardi, Damian Martino, and Peter Neumann, members of the Fire Pension Fund Medical Board, oppose the petition.  The petition is granted to the extent discussed below.

## II.      BACKGROUND

In 2005, two years before beginning his employment with the FDNY, the petitioner suffered an injury to his right shoulder while lifting weights, necessitating a surgical repair.  The petitioner thereafter began working as a full-duty firefighter for the FDNY in August 2007. During his employment with the FDNY, he suffered several additional injuries to his right shoulder while in the line-of-duty—on June 12, 2010, February 21, 2012, and July 23, 2013.

**158921/2022   CLANCY, MICHAEL C vs. KAVANAGH, LAURA ET AL**
  **Motion No.  001**

**Page 1 of 8**

[* 1]

Following each of these line-of-duty injuries the petitioner was medically cleared and able to return to full duty.

On December 4, 2020, the petitioner again injured his right shoulder when he slipped and fell while doing maintenance work atop a firetruck. As described in a subsequent report by the petitioner's treating physician, Dr. Answorth Allen, an orthopedic surgeon at the Hospital for Special Surgery ("HSS"), the petitioner suffered an acute injury when, to arrest his fall from atop the firetruck, he grabbed a crossbar with his right hand causing a hyperabduction of, and "sudden trauma" to, his right shoulder.

The parties agree that the December 2020 injury resulted from an accident suffered while the petitioner was in the line-of-duty. The parties further agree that the petitioner, who was previously able to fully perform the physically demanding functions of a full-duty firefighter, became permanently disabled following the December 2020 injury, as he suffered persistent motion loss, pain, and notably decreased strength in his right shoulder despite extensive medical treatment.

On January 5, 2021, the petitioner began treatment for the December 2020 injury with Dr. Allen, who thereafter performed two surgeries to repair the petitioner's right shoulder, an arthroscopic bankart repair, capsulorrhaphy, and biceps tenodesis performed on January 28, 2021, and a second surgery for capsular release, manipulation under anesthesia, and labral repair on September 16, 2021. In a letter dated December 17, 2021, Dr. Allen noted that "[p]revious to [the December 2020 injury] Mr. Clancy claims to have had no pain, full range of motion, and full weight bearing to right shoulder[,]" but that, more than a year later, and despite the medical treatment rendered to him, the petitioner continued to suffer from "persistent motion loss, notable decreased strength . . . and persistent pain" in his right shoulder. Consequently, Dr. Allen concluded that, "[b]ased on these factors from the [December 2020] accident, Mr. Clancy is not a candidate to return to his full duties as a firefighter."

On December 22, 2021, the FDNY Bureau of Health Services ("BHS") Medical Committee issued an opinion agreeing with Dr. Allen's finding that the petitioner was permanently disabled for full firefighting duties, citing his persistent limitations in range of motion and strength following the December 2020 injury and the subsequent surgeries to repair his right shoulder. Notably, the BHS opinion took account of the fact that the petitioner had a previous surgical repair of his right shoulder in 2012 (following the second of the four line-of-

158921/2022  CLANCY, MICHAEL C vs. KAVANAGH, LAURA ET AL
Motion No. 001

Page 2 of 8

2 of 8

[* 2]

duty injuries to his right shoulder), but that he "had been working full duty since then and doing well," at least up until the December 2020 injury. Based on this BHS opinion, on January 14, 2022, the Fire Commissioner's Office submitted applications for ADR and ODR on the petitioner's behalf. ADR pensions are granted to firefighters who are disabled due to an accidental injury in the line of duty. ODR pensions are a lesser pension granted to those who are disabled, but not due to an injury suffered in the line of duty.

On April 13, 2022, the Fire Pension Fund Medical Board (the "Medical Board") issued its recommendations based on its review of the petitioner's medical records going back to his first line-of-duty injury in 2010, including the injury reports from his various line-of-duty injuries, MRI reports related to his line-of-duty injuries, reports from BHS physician examinations, relevant surgical notes, and the petitioner's HSS treatment records from Dr. Allen. The Medical Board did not review any medical records from before 2010, but briefly noted the petitioner's history of a non-line-of-duty right shoulder injury and surgical repair in 2005. After summarizing the petitioner's medical history, including the treatment he received following the December 2020 injury, as well as the three prior line-of-duty injuries to the same right shoulder, the Medical Board unanimously concluded that the petitioner "is permanently disabled from performing full Firefighting duties due [sic] his right shoulder." The Medical Board noted, with respect to the petitioner's medical history, that:

[T]he member underwent multiple right shoulder surgeries. The member had a history of a Labral tear in 2005 and radiographic evidence of previous shoulder dislocation first noted in 2012 as per his MRI right shoulder dated 2/23/2012 (which indicated a Hill-Sachs lesion of the Humeral head). The follow up MRIs do not show an acute injury due to the fact that injuries where [sic] on the Bursal side of the joint.

The Medical Board then "further note[d]," without explanation, "that the injury dated 12/4/2020 is not the proximate cause of the member's right shoulder disability" and recommended the petitioner for ODR rather than ADR.

On June 29, 2022, the Board of Trustees held a meeting to, *inter alia*, review the Medical Board's recommendation and decide the petitioner's ADR application. The Board of Trustees' vote regarding the petitioner's application for ADR benefits was tied, 6 to 6. Accordingly,

158921/2022 CLANCY, MICHAEL C vs. KAVANAGH, LAURA ET AL
Motion No. 001

Page 3 of 8

3 of 8

[* 3]

pursuant to well-established and accepted practice in the case of a deadlocked vote, the Board of Trustees denied the ADR application and granted the petitioner an ODR.

The petitioner thereafter commenced this proceeding seeking, as relevant here, to have the court (1) annul the determination of the Board of Trustees to deny his ADR application and (2) direct the Board of Trustees to grant his ADR application; or, in the alternative, (3) direct a trial pursuant to CPLR 7804(h) so that the doctors from the Medical Board may be produced to testify in support of their recommendation to deny ADR benefits; or, in the alternative, (4) remand the matter to the Board of Trustees to have the petitioner's ADR application reviewed by a newly composed Medical Board. The respondents oppose the petition.

### III. LEGAL STANDARD

Pursuant to Administrative Code of the City of New York § 13-353, an FDNY firefighter is entitled to ADR benefits if medical examination and investigation show that he or she is "physically or mentally incapacitated" during his or her service "as a natural and proximate result of an accidental injury received in such city-service." See Matter of Meyer v Bd. of Trustees of the New York City Fire Dept., Art. 1-B Pension Fund by Safir, 90 NY2d 139, 144 (1997). In evaluating an FDNY member's eligibility for ADR, the Medical Board first conducts a medical examination and reviews medical records to determine whether the member is disabled for performance of duty. Id. "If the Medical Board concludes that the member is disabled, it must further determine whether the disability is a natural and proximate result of an accidental injury received in such city-service and certify its recommendation on this issue to the Board of Trustees, the body ultimately responsible for retiring the pension fund member and determining the issue of service-related causation." Id.

"Ordinarily, the decision of the board of trustees as to the cause of an officer's disability will not be disturbed unless its factual findings are not supported by substantial evidence or its final determination and ruling is arbitrary and capricious." Matter of Canfora v Bd. of Trustees of Police Pension Fund of Police Dept. of City of New York, 60 NY2d 347, 351 (1983); see CPLR 7803(3) & (4). However, where, as here, the court reviews a determination of the Board of Trustees to deny ADR, and the Board of Trustees' determination resulted from a tied vote, "the standard of judicial review is necessarily different," as "there has been no factual determination by the board to be subjected to review" under the normal standard. Matter of Canfora v Bd. of Trustees of Police Pension Fund of Police Dept. of City of New York, supra at 351-52; see

158921/2022   CLANCY, MICHAEL C vs. KAVANAGH, LAURA ET AL
Motion No.  001

Page 4 of 8

4 of 8

[* 4]

Matter of Meyer v Bd. of Trustees of the New York City Fire Dept., Art. 1-B Pension Fund by Safir, supra at 145. In such circumstances, the reviewing court may not set aside the Board of Trustees' determination "unless it can be determined as a matter of law on the record that the disability was the natural and proximate result of a service-related accident." Matter of Walsh v Scoppetta, 18 NY3d 850, 852 (2011), *citing* Matter of Canfora v Bd. of Trustees of Police Pension Fund of Police Dept. of City of New York, supra. Consequently, "as long as there was any credible evidence of lack of causation before the Board of Trustees, its determination must stand." Matter of Meyer v Bd. of Trustees of the New York City Fire Dept., Art. 1-B Pension Fund by Safir, supra at 145; see Matter of Baranowski v Kelly, 95 AD3d 746, 746 (1st Dept. 2012) (where, as here, Medical Board finds an employee disabled and Board of Trustees deadlocks on issue of causation, "accidental disability retirement is denied as long as there is any credible evidence of lack of causation before the Board of Trustees").

IV.     DISCUSSION

In support of the petition, the petitioner submits, *inter alia*, his employment-related medical records from the BHS, including reports from examinations by BHS physicians and injury reports dating back to the petitioner's first line-of-duty injury on June 12, 2010; records from Dr. Allen's treatment of the petitioner; MRI reports; the opinion of the BHS Medical Committee; the recommendation of the Medical Board; and the resolution of the Board of Trustees to deny the petitioner's ADR application and grant only his ODR application.

In opposition, the respondents submit, *inter alia*, the same documents submitted by the petitioner, as well as reports from MRIs performed following each of the petitioner's line-of-duty injuries prior to the December 2020 injury, and minutes from the Board of Trustees' June 29, 2022, meeting.

It is undisputed that, despite his history of right shoulder injuries, the petitioner did not suffer from a right shoulder disability and was medically cleared and able to perform his job as a full duty firefighter prior to the December 2020 injury; that the December 2020 injury resulted from an accident and was a line-of-duty injury; and that, following the December 2020 injury, despite undergoing a pair of surgical repairs, the petitioner was determined by his treating physician, Dr. Allen, the BHS Medical Committee, and the Medical Board to be permanently disabled due to the condition of his right shoulder. Based on these undisputed facts, logic would dictate that the December 2020 injury was the proximate cause of the petitioner's

158921/2022   CLANCY, MICHAEL C vs. KAVANAGH, LAURA ET AL                        Page 5 of 8
  Motion No.  001

[* 5]                                              5 of 8

disability. Indeed, both Dr. Allen and the BHS Medical Committee attributed the cause of the petitioner's disability to the December 2020 injury. The Medical Board, however, inexplicably concluded otherwise, finding that the December 2020 injury was not the proximate cause of the petitioner's disability and recommending to the Board of Trustees against granting ADR benefits.

The basis for the Medical Board's conclusion regarding the lack of causality is far from clear, as it is stated in conclusory fashion without a plain explanation of the Board's reasoning. However, based on the discussion of the petitioner's medical history that immediately precedes the announcement of the Board's causality finding, its reasoning appears to be that the petitioner had a history of previous injuries to the same right shoulder, and that the petitioner's disability manifested in a different part of the right shoulder than that affected by the December 2020 injury. Assuming this accurately reflects the Board's reasoning, this rationale strains credulity.

With respect to the petitioner's history of prior right shoulder injuries, it is undisputed that his initial 2005 injury did not prevent him from gaining employment as a firefighter, and that he was medically cleared and able to return to full duty after each of his subsequent injuries, all of which were suffered in the line-of-duty. Indeed, the BHS Medical Committee itself noted that the petitioner had a previous surgical repair of his right shoulder in 2012 but "had been working full duty since then and doing well," up until the December 2020 injury. It was incumbent on the Medical Board, if it wished to point to these prior injuries as the true cause of the petitioner's disability, to reasonably address this glaring incongruity. It did not do so. Further, the Medical Board had before it no credible evidence that would have allowed it to conclude that the 2005 non-line-of-duty injury was the cause of the plaintiff's disability, as it only reviewed medical records dating back to 2010. See Matter of Meyer v Bd. of Trustees of the New York City Fire Dept., Art. 1-B Pension Fund by Safir, supra at 147 ("credible evidence is evidence that proceeds from a credible source and reasonably tends to support the proposition for which it is offered . . . [it is] not merely a conclusion of law, nor mere conjecture or unsupported suspicion"). And, insofar as the Board was pointing to the petitioner's prior line-of-duty injuries as the cause of his disability, its conclusion was irrational and internally inconsistent because attributing causation to these prior line-of-duty injuries should still result in a recommendation in favor of ADR benefits.

158921/2022  CLANCY, MICHAEL C vs. KAVANAGH, LAURA ET AL
Motion No.  001

Page 6 of 8

[* 6]

As to the possibility that the Medical Board's rationale was that the disability manifested in a different part of the right shoulder than that affected by the December 2020 injury, the Board's conclusion simply lacks a sound basis in reason or any medical explanation articulated in the record. The basis for this reading of the Board's reasoning is its statement, immediately after a brief reference to the petitioner's prior right shoulder surgery in 2012, that "follow up MRIs do not show an acute injury due to the fact that injuries where [sic] on the Bursal side of the joint." Assuming that this highly ambiguous statement was meant to convey that, in the Board's opinion, the petitioner's disability stemmed from a condition affecting a different part of the right shoulder than that affected by the December 2020 injury, it is unclear how one would square this opinion with the Board's much more clearly explicated disability finding. The Board's conclusion that the petitioner was disabled was based on the medical evidence that, following the pair of surgical repairs performed by Dr. Allen, the petitioner continued to suffer from persistent pain, weakness, and decreased range of motion in his right shoulder. That is, the disability found by the Board was attributed to the condition of the petitioner's right shoulder generally, and not to a more particular condition specifically affecting or located in only one discrete portion of the joint.

Moreover, the Board's apparent reasoning would require one to believe that, in an incredible coincidence, the petitioner suffered a severe injury to one part of his right shoulder, requiring multiple surgical repairs, and, simultaneously, a latent and/or preexisting condition, in a different part of the same shoulder suddenly, for an unknown but entirely unrelated and independent reason, caused the petitioner to become permanently disabled. The court simply cannot find rationality in such a conclusion. Further, other than its general summary of the petitioner's history of prior shoulder injuries, the Medical Board does not identify a specific, alternative cause of his disability, let alone point to credible evidence demonstrating causality with respect to such an alternative.

In sum, the Medical Board failed to clearly explicate the rationale for its causality opinion, leaving the court to guess at its reasoning. Even so, the conclusion that the Medical Board lacked any credible evidence of lack of causation appears nearly inescapable. Either the Medical Board's causality finding was based on impermissible conjecture regarding the presence of some unidentified alternative cause for the petitioner's disability, or else it was premised on the petitioner's prior line-of-duty injuries, which are the only potential alternative cause that appear in the records reviewed by the Medical Board. But, as already discussed above, if the prior line-of-duty injuries are to be accepted as the true cause of the petitioner's

158921/2022  CLANCY, MICHAEL C vs. KAVANAGH, LAURA ET AL                    Page 7 of 8
  Motion No.  001

[* 7]                                                          7 of 8

disability, then the Medical Board must explain why such a conclusion does not itself require a recommendation in favor of ADR benefits.

For these reasons, the petition is granted to the extent that the determination to deny the petitioner's ADR application is annulled and the proceeding is remanded to the Medical Board either to reassess the evidence in its entirety or to set forth a clear and thorough explanation as to how it determined that the December 2020 injury was not the cause of the petitioner's disability and/or, if the cause of his disability is determined to be his prior line-of-duty injuries, why this would not also entitle him to ADR benefits.

## V.     CONCLUSION

Accordingly, it is

ORDERED and ADJUDGED that the petition is granted to the extent that the determination is annulled and the matter remanded for appropriate reconsideration in accordance with this court's decision; and it is further

ORDERED that the Clerk of the court shall enter judgment accordingly.

This constitutes the Decision and Order of the court.

_____
NANCY M. BANNON, J.S.C.
**HON. NANCY M. BANNON**

**1/3/2024**
**DATE**

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**158921/2022  CLANCY, MICHAEL C vs. KAVANAGH, LAURA ET AL**
**Motion No.  001**

**Page 8 of 8**

[* 8]